# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1358**

**CA 13-00923**

PRESENT: SMITH, J.P., FAHEY, LINDLEY, SCONIERS, AND WHALEN, JJ.

---

QUINN HEYWARD, PLAINTIFF-APPELLANT,

V                                                    MEMORANDUM AND ORDER

BRUCE SHANNE AND VALERIE SHANNE,
DEFENDANTS-RESPONDENTS.

---

ATHARI & ASSOCIATES, LLC, UTICA (MO ATHARI OF COUNSEL), FOR
PLAINTIFF-APPELLANT.

BOND, SCHOENECK & KING, PLLC, SYRACUSE (DANIEL J. PAUTZ OF COUNSEL),
FOR DEFENDANTS-RESPONDENTS.

---

Appeal from an amended order of the Supreme Court, Oneida County (Samuel D. Hester, J.), entered April 15, 2013 in a personal injury action. The amended order, inter alia, denied that part of the motion of plaintiff for partial summary judgment.

It is hereby ORDERED that said appeal from the amended order insofar as it denied that part of the motion to preclude defendants from presenting evidence of factors other than lead poisoning that may have contributed to plaintiff's injuries is dismissed and the amended order is affirmed without costs.

Memorandum: Plaintiff commenced this action seeking damages for injuries he allegedly sustained as the result of his exposure to lead paint in an apartment rented by his mother from defendants when he was a child. Plaintiff moved for partial summary judgment "on the issues of notice, negligence and substantial factor," and for an order, inter alia, taking judicial notice of certain statutes and regulations regarding lead based paint; "precluding defendants' attorneys and hired experts from claiming socioeconomic, genetic, eugenic or euthenics alternative and/or negating cause[s]"; and dismissing defendants' affirmative defenses, with the exception of the affirmative defense seeking a collateral source offset under CPLR 4545. Supreme Court denied the motion except with respect to that part of the first affirmative defense asserting lack of actual notice as a result of the issuance of violations by health authorities, and plaintiff appeals.

We note at the outset that the appeal from the order insofar as it denied that part of the motion seeking to "preclud[e] defendants' attorneys and hired experts from claiming socioeconomic, genetic, eugenic or euthenics alternative and/or negating cause[s]" must be

dismissed.  " '[A]n evidentiary ruling, even when made in advance of trial on motion papers constitutes, at best, an advisory opinion which is neither appealable as of right nor by permission' " (*Pagan v Rafter*, 107 AD3d 1505, 1507).

Plaintiff further contends that the court erred in denying that part of his motion seeking partial summary judgment "on the issues of notice, negligence, and substantial factor."  We reject that contention.  "It is well settled that in order for a landlord to be held liable for injuries resulting from a defective condition upon the premises, the plaintiff must establish that the landlord had actual or constructive notice of the condition for such a period of time that, in the exercise of reasonable care, it should have been corrected" (*Juarez v Wavecrest Mgt. Team*, 88 NY2d 628, 646; *see Stokely v Wright*, 111 AD3d 1382, 1382).  Under the circumstances of this case, we conclude that there is an issue of fact whether defendants had notice of the dangerous lead paint condition in the subject apartment "for such a period of time that, in the exercise of reasonable care, it should have been corrected" (*Juarez*, 88 NY2d at 646; *see Derr v Fleming*, 106 AD3d 1240, 1242; *Woods v Alvarez*, 300 AD2d 301, 302; *Perez v Ward*, 271 AD2d 590, 591).  With respect to constructive notice, we note that the Court of Appeals in *Chapman v Silber* (97 NY2d 9, 15) wrote that constructive notice of a hazardous, lead-based paint condition may be established by proof "that the landlord (1) retained a right of entry to the premises and assumed a duty to make repairs, (2) knew that the apartment was constructed at a time before lead-based interior paint was banned, (3) was aware that paint was peeling on the premises, (4) knew of the hazards of lead-based paint to young children and (5) knew that a young child lived in the apartment." Here, we conclude that there is an issue of fact with respect to the third *Chapman* factor, i.e., whether defendants were aware that paint was peeling on the premises (*see generally id.*; *Watson v Priore*, 104 AD3d 1304, 1305-1306, *lv dismissed in part and denied in part* 21 NY3d 1052).  We also conclude that the court properly determined that there is an issue of fact as to causation (*see Robinson v Bartlett*, 95 AD3d 1531, 1534-1535; *Cunningham v Anderson*, 85 AD3d 1370, 1374-1375, *lv dismissed in part and denied in part* 17 NY3d 948).

To the extent that plaintiff challenges the amended order insofar as it denied without prejudice that part of the motion with respect to judicial notice (*see generally Ciesinski v Town of Aurora*, 202 AD2d 984, 984), we conclude that the court properly denied that part of the motion inasmuch as the statutes and regulations in question are inapplicable at this juncture of the litigation (*see Stover v Robilotto*, 277 AD2d 801, 802, *affd* 97 NY2d 9; *Hamilton v Miller*, 106 AD3d 1476, 1477-1478; *Sykes v Roth*, 101 AD3d 1673, 1674; *Skerritt v Bach*, 23 AD3d 1080, 1081).  We also conclude that the court properly denied those parts of the motion with respect to the affirmative defenses other than that part of the first affirmative defense concerning actual notice, as previously noted herein.  The court properly concluded that defendants are entitled to assert that plaintiff's mother "affirmatively created or exacerbated the lead paint conditions" at the apartment or elsewhere, such as at plaintiff's "secondary address" with his grandmother at the Howard

Avenue residence (*M.F. v Delaney*, 37 AD3d 1103, 1105), although she was not liable for alleged negligent parental supervision (*see id.*; *see generally LaTorre v Genesee Mgt.*, 90 NY2d 576, 579).  The court further properly determined that defendants are entitled to assert that "[p]laintiff's conduct when he was a preteen and teenager . . . may have constituted a failure to mitigate damages at a time when plaintiff could be held legally responsible for his actions" (*Cunningham*, 85 AD3d at 1372), although the affirmative defenses alleging plaintiff's culpable conduct, failure to mitigate damages and assumption of risk will not apply prior to the time when he could be held responsible for his actions (*see id.*; *see also Watson*, 104 AD3d at 1306; *Sykes*, 101 AD3d at 1674).  Likewise, we conclude that the court properly determined that defendants may present evidence at trial with respect to the affirmative defenses based on CPLR article 16 and alleging that plaintiff was exposed to lead paint at a location other than the apartment rented from defendants by plaintiff's mother, and that any injury plaintiff suffered as a result of exposure at that apartment is distinct from injury plaintiff suffered as a result of exposure to lead paint elsewhere (*see generally Cunningham*, 85 AD3d at 1372).

       SMITH, J.P., LINDLEY, SCONIERS, and WHALEN, JJ., concur; FAHEY, J., concurs in the following Memorandum:  I respectfully concur in the result reached by the majority, namely, the dismissal of the appeal from the amended order insofar as it denied that part of the motion to preclude defendants from presenting evidence of factors other than lead poisoning that may have contributed to plaintiff's injuries and the affirmance of the amended order.  I write separately, however, to address the dismissal of part of the appeal.  I agree with the majority that " 'an evidentiary ruling, even when made in advance of trial on motion papers constitutes, at best, an advisory opinion which is neither appealable as of right nor by permission' " (*Pagan v Rafter*, 107 AD3d 1505, 1507), and that the appeal from the amended order insofar as it denied that part of the motion seeking to "preclud[e] defendants' attorneys and hired experts from claiming socioeconomic, genetic, eugenic or euthenics alternative and/or negating cause[s]" must be dismissed.  I also note, however, that I am troubled by the concept that an individual's *family history* may be relevant to establishing a baseline for the purpose of measuring cognitive disability or delay.  I acknowledge that an explanation for cognitive problems may arise from one's *personal history*, but as a conceptual and general matter I cannot agree with the principle of the eugenics defense that defendants propose here.  To my mind, the *family* of a plaintiff in a lead paint case does not put its medical history and conditions at issue, and the attempt to establish biological characteristics as a defense to diminished intelligence, i.e., a eugenics argument, cannot be countenanced and is something I categorically reject.

Entered:  February 7, 2014                      Frances E. Cafarell
                                                Clerk of the Court